## THE VIGILANT.

*(District Court, E. D. New York. June 2, 1881.)*

1. DAMAGE—TUG AND TOW—STRANDING IN CREEK.

Where a tug, taking a canal-boat up a narrow creek, only navigable at high water, grounded by careless navigation, and, the tow left to itself, also grounded and received damage in consequence, *held*, that the tug was liable for such damage, it being her duty to keep herself off the bank so as to control the movements of the tow and prevent injury to it.

*J. A. Hyland*, for libellant.

*O. A. Payne*, for respondent.

BENEDICT, D. J. This action is brought to recover of the steam-tug Vigilant the damages resulting from a stranding of the canal-

boat Kate Stewart while being towed by the Vigilant up Glen Cove creek. Glen Cove creek is a small arm of the sea running from the sound to the village of Glen Cove. This creek, at low water, is a small brook; at high water, it is navigable for vessels drawing not more than six feet. When the tide is in, the channel varies in width from 25 to 75 feet, and is crooked. In March, 1880, the tug Vigilant contracted to tow the canal-boat Kate Stewart, then lying at the stakes off the mouth of the creek with a load of coal on board, from the place of mooring to the dock of the Glen Cove Starch Factory, near the head of the creek. On the seventh of March the tug started to perform this contract, taking the Kate Stewart and two other canal-boats on a bridle astern, the tide being about slack-water flood. In making the turn to enter the creek the canal-boats did not follow the tug, and the Kate Stewart grounded on the right bank near Carpenter's dock. After some unsuccessful efforts to pull the Kate Stewart off the mud, the Vigilant left her and proceeded up the creek with the two other canal-boats. Shortly she returned and hauled the Kate Stewart off, and then proceeded to tow her up the creek, this time upon a single hawser astern, instead of a bridle. In making the next turn it appeared to those in charge of the tug that the canal-boat was in danger of running upon some rocks which lie near the left bank just above the turn. With the idea of preventing the canal-boat from striking upon these rocks the tug bore off to the right, and, in so doing, grounded herself upon the right bank of the creek. When the tug stopped, by reason of grounding, the canal-boat moved past the tug, the hawser being cast off by direction of those on the tug; but when the momentum acquired from the tug had spent its force the canal-boat drifted back, the tide having then begun to fall, her stern caught on the right bank, her bow swung around and caught on the left bank, and so she was left, her bow and stern resting upon the banks of the creek, but without support midships, so that, as is claimed, she sustained serious damage when the tide fell. To recover this damage is the object of this suit.

The evidence plainly shows that the immediate cause of the grounding of the canal-boat was the grounding of the tug. An effort was made to prove that the canal-boat would not have grounded if she had let go an anchor, or made proper use of a pole to keep herself in the channel. But I am not convinced that the letting go an anchor in this narrow place would have prevented the canal-boat from grounding, or that she could have been kept in the channel,

after the tug grounded, by any reasonable effort on her part. On the contrary, in my opinion, the grounding of the canal-boat was the immediate and necessary result of the grounding of the tug.

This being the fact, the liability of the tug seems to follow, for it can hardly be doubted that the grounding of the tug must be attributed to carelessness on the part of those in charge of the tug. The first duty of the tug towing a canal-boat in such a channel was to keep herself off from the banks. The sole reason why the tug grounded on this occasion was that she held on too long towards the right bank. The bank was plainly to be seen, the tug was bound to know how near the bank she could go, and with her eyes open, there being no wind, tide, or other vessel to interfere with her, she kept on bearing to starboard until she brought up on the bank. Such navigation must be deemed faulty, and it rendered the tug liable for the damage that ensued.

There must be a decree for the libellant and an order of reference to ascertain the amount.